```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF GEORGIA
                          ATHENS DIVISION

KRISTIN HARBAUGH,                *

     Plaintiff,                  *

vs.                              *
                                           CASE NO. 3:12-CV-110 (CDL)
ANDREW STOCHEL, PhD.,            *

     Defendant.                  *
_____
```

O R D E R

This action arises from the involuntary detention of Plaintiff Kristin Harbaugh ("Harbaugh"), a graduate student at the University of Georgia. The University of Georgia police arrested Harbaugh and transported her to a hospital for a mental evaluation after Harbaugh's psychologist, Defendant Andrew Stochel ("Stochel"), directed them to do so pursuant to Georgia law. Harbaugh alleges that Stochel failed to comply with Georgia law when he completed the statutory form authorizing law enforcement officers to detain her involuntarily for a mental evaluation. Based on this noncompliance, Harbaugh asserts claims against Stochel in his individual capacity pursuant to 42 U.S.C. § 1983 for violating her constitutional rights.

Stochel maintains that he had probable cause to believe that Harbaugh was an immediate danger to herself or others and that he was authorized under Georgia law to initiate the process

for having her temporarily detained for a mental evaluation. To the extent that he did not comply with the requirement under Georgia law that he must have personally examined her within forty-eight hours of initiating involuntary detention, Stochel argues that it was not clearly established at the time that such failure on his part would be considered a violation of the detained person's constitutional rights. Accordingly, Stochel has filed a motion to dismiss, asserting that he is entitled to qualified immunity. For the reasons set forth below, Stochel's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 16) is granted.

## MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of

the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

Harbaugh was a graduate student at the University of Georgia. She was a dual degree student working on a Master of Public Health and a Master of Science in veterinary and biomedical sciences, and she also held a graduate research assistantship through the University's College of Veterinary Medicine. In addition, Harbaugh held a full time job and supported her disabled husband.

During 2011, due to the stress resulting from an increase in her responsibilities and demands placed on her time, Harbaugh began experiencing panic attacks approximately once a week. Harbaugh had previously experienced panic attacks, but only once every three to six months. In June of 2011, Harbaugh sought counseling at the University's Counseling and Psychiatric Services ("CAPS"). After an initial assessment, Harbaugh began seeing Stochel, a psychologist at CAPS.

During Harbaugh's first visit with Stochel, Stochel recommended that Harbaugh also see a CAPS psychiatrist, Dr. Shapiro. Shapiro prescribed a drug regimen for Harbaugh. After Harbaugh began the prescribed drug regimen, the panic attacks worsened, occurring more suddenly and accompanied by hot flashes and a number of other side effects.

On September 23, 2011, shortly after Shapiro increased the dosage of one of her medications, Harbaugh experienced what she calls a "severe panic attack." 1st Am. Compl. ¶ 9, ECF No. 14. "It lasted for hours while she screamed, growled, and shook uncontrollably after locking herself in a closet." *Id.* Her husband and mother reported that Harbaugh "was hitting herself in the face and head while screaming 'Get it Out!' and 'Make it stop!'" *Id.* Shapiro labeled the event Harbaugh's "first dissociative episode" and recommended adding another drug to her regimen. *Id.* ¶ 10.

On October 20, 2011, Harbaugh had another episode like the one she had on September 23. She also began experiencing a number of side effects, as well as significant memory loss. Stochel began to explore voluntary hospitalization, and Shapiro recommended adding another drug to Harbaugh's regimen.

On November 15, 2011, Stochel told Harbaugh that "since she had a dissociative disorder rather than anxiety she was not within his scope of treatment." *Id.* ¶ 12. Stochel told

4

Harbaugh that it was their last session together and that he was referring her to a practitioner who had experience with treatment for trauma and dissociative disorders. He did not mention hospitalization at that time.

Over the next few days, Harbaugh's condition continued to deteriorate, and her family became concerned. Harbaugh's husband contacted Stochel to discuss Harbaugh's condition. Stochel then telephoned Harbaugh and told her that her parents were coming to Athens to hospitalize her. Harbaugh hung up on Stochel. According to Harbaugh, Stochel did not conduct a mental status exam during the phone call. *Id.* ¶ 14.

On November 21, 2011, Stochel prepared a Form 1013, which is an emergency evaluation form used by a mental health professional to authorize the police to transport an individual who presents a danger to herself or others to a facility for examination.[1] In the form, Stochel certified that Harbaugh was a

---

[1] Under Georgia law, a licensed psychologist "may execute a certificate stating that he has personally examined a person within the preceding 48 hours and found that, based upon observations set forth in the certificate, the person appears to be a mentally ill person requiring involuntary treatment." O.C.G.A. § 37-3-41(a), (d). After such a certificate is executed, a peace officer must "make diligent efforts to take into custody the person named in the certificate and to deliver him forthwith to the nearest available emergency receiving facility serving the county in which the patient is found, where he shall be received for examination." O.C.G.A. § 37-3-41(a). Once the person is taken to an emergency receiving facility, he must be examined within forty-eight hours and released unless an "examining physician or psychologist concludes that there is reason to believe that the patient may be a mentally ill person requiring involuntary treatment." O.C.G.A. § 37-3-43(a)(1). The emergency receiving facility must notify the patient that he has a right to legal counsel

5

danger to herself or others because she made threatening statements. Harbaugh alleges that Stochel falsified the form because the form requires the mental health professional to certify that he has examined the individual within 48 hours of signing the certificate. *Id.* ¶¶ 15, 18. According to Harbaugh, Stochel did not base the Form 1013 on an examination of Harbaugh; rather, Stochel based the form on the conversation he had with Harbaugh's husband. *Id.* ¶ 18.

Stochel contacted the Athens-Clarke County police and requested that Harbaugh be taken to a hospital. The Athens-Clarke County police visited Harbaugh at her home and determined that she was not a danger to herself or others, and the officers therefore refused to remove Harbaugh from her home. The Athens-Clarke County police informed Stochel of their decision. Stochel then contacted the University of Georgia police to arrange for Harbaugh to be transported to the hospital. The University of Georgia police complied. The staff at the hospital examined Harbaugh and concluded "that she did not meet the requirements for involuntary detention." *Id.* ¶ 17. Harbaugh was therefore released from the hospital.

---

and that he has a right to petition for a writ of habeas corpus or for a protective order. O.C.G.A. § 37-3-44(a).

DISCUSSION

Harbaugh brings claims against Stochel under 42 U.S.C. § 1983, contending that Stochel violated her Fourth Amendment right to be free from unreasonable seizures. Harbaugh also asserts procedural due process and substantive due process claims. Those claims, like the Fourth Amendment claim, are based on Stochel's conduct in completing the Form 1013 and calling the police to transport Harbaugh to the hospital. Harbaugh's claims are against Stochel in his individual capacity only. Pl.'s Resp. & Br. in Opp'n to Mot. to Dismiss 6, ECF No. 9 ("Harbaugh never made an official capacity claim.").

I. **Harbaugh's Fourth Amendment Claim**

Stochel argues that he is entitled to qualified immunity on Harbaugh's Fourth Amendment claim because the factual allegations in Harbaugh's Complaint establish that it was reasonable for him to believe that Harbaugh was a danger to herself or others when he completed the Form 1013 and asked the police to take Harbaugh to the hospital. He also maintains that even if his certification in the form that he personally examined Harbaugh within the preceding forty-eight hours was incorrect, it was not clearly established at the time that such conduct by him would amount to a violation of Harbaugh's constitutional rights. "Qualified immunity offers complete protection for individual public officials performing

discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks omitted). Here, Harbaugh cannot seriously dispute that Stochel was acting in the scope of his discretionary authority when he completed the Form 1013 and asked the police to take Harbaugh to the hospital. Qualified immunity must be granted unless the allegations taken in the light most favorable to Harbaugh show "(1)that there was a violation of the Constitution and (2) that the illegality of [Stochel's] actions was clearly established at the time of the incident." *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012). The Court may determine in its discretion "'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Loftus*, 690 F.3d at 1204 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Here, the Court finds that the qualified immunity analysis should begin and end with the second prong because it was not clear at the time of the events giving rise to this action that a reasonable state employee in Stochel's position would have known that his conduct amounted to a constitutionally unreasonable seizure.

"The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)). The relevant question is whether it would be clear to a reasonable state official "that his conduct was unlawful in the situation he confronted." *Id.* (internal quotation marks omitted). To answer this question, the Court must look to law as decided by the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, and the Supreme Court of Georgia. *Id.*

To proceed on her claim that Stochel violated a federal civil right, Harbaugh "must demonstrate that the contours of the right were clearly established in [one of three] ways." *Id.* (alteration in original) (intenal quotation marks omitted). First, she "may show that a materially similar case has already been decided." *Id.* (internal quotation marks omitted). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Hoyt*, 672 F.3d at 977 (internal quotation marks omitted). Second, Harbaugh "may point to a broader, clearly established principle [that] should control the novel facts [of the] situation." *Loftus*, 690 F.3d at 1204 (alterations in original) (internal quotation marks omitted). "[T]he principle must be established with obvious clarity by the case law so that every objectively

9

reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* at 1205 (alteration in original) (internal quotation marks omitted). Third, "the conduct involved in the case may so obviously violate [ ] th[e] constitution that prior case law is unnecessary." *Id.* (alterations in original) (internal quotation marks omitted). "This narrow category encompasses those situations where the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law. *Id.* (alteration in original) (internal quotation marks omitted). In other words, "the conduct must have been so far beyond the hazy border between excessive and acceptable [action] that [the official] had to know he was violating the Constitution." *Hoyt*, 672 F.3d at 978.

   Harbaugh has pointed the Court to no case with facts and circumstances similar to those that existed here, and the Court has found none. Likewise, Harbaugh has directed the Court to no Supreme Court or Eleventh Circuit precedent providing a clearly established principle as to when a mental health professional's conduct in the initiation of an involuntary detention of a patient gives rise to a constitutional violation. Harbaugh

10

relies on an Eighth Circuit case which stands for the proposition that a police officer violates a person's due process rights when he knowingly communicates false information to convince a mental health investigator to begin commitment proceedings. *Hedges v. Poletis*, 177 F.3d 1071, 1075 (8th Cir. 1999). This Eighth Circuit decision is consistent with the general principle that is clearly established in the Eleventh Circuit that a law enforcement officer is prohibited "from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen," and an officer can be liable for the false statements if they "were necessary to the probable cause." *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999). Therefore, it is reasonable to conclude that a state official in Stochel's position should have known that he could not make up facts to have someone taken against her will for a mental evaluation and that if he did, he could be found to have violated her constitutional rights.

Here, Harbaugh alleges that Stochel falsified a Form 1013, 1st Am. Compl. ¶ 15, which law enforcement officers relied on to arrest Harbaugh. Significantly, she does not allege that Stochel knowingly lied about Harbaugh's *condition* on the form. If Stochel had misrepresented Harbaugh's mental condition in the form or if he had no probable cause to believe that she qualified for involuntary detention under the statute and yet he

11

initiated the process for having her arrested, then that situation could be sufficiently analogous to *Jones* such that Stochel should be deemed to have been on notice that his conduct violated Harbaugh's constitutional rights. But here, Stochel did not misrepresent Harbaugh's mental condition, and Harbaugh's allegations do not demonstrate that he had no probable cause to believe she was likely a danger to herself or others. Instead, Harbaugh alleges that the false misrepresentation in the Form 1013 is that Stochel certified in the form that had personally examined Harbaugh within 48 hours of signing the form even though he did not do so. *Id.* ¶ 18.

Harbaugh suggests that *Jones* clearly stands for the principle that any state official who makes a false statement in an affidavit that authorizes someone to be deprived of their freedom involuntarily has violated that person's constitutional rights. The Court need not decide whether Harbaugh's interpretation of *Jones* is correct. The Court only needs to decide whether that interpretation is *clearly* correct. The Court cannot find that it is. *Jones* could be interpreted to mean that for there to be a constitutional violation, the false representation must relate to the actual facts upon which the ultimate deprivation is based. In this case, those facts would be those relating to Harbaugh's mental condition and whether Stochel had probable cause to believe that she was a danger to

12

herself or others, even if he did not base that decision on a mental examination that occurred within the preceding 48 hours. The allegations in Harbaugh's Complaint establish that she was Stochel's patient for several months; that Harbaugh had significant symptoms that were getting worse; that Harbaugh's condition continued to deteriorate; that she suffered two dissociative episodes; that Harbaugh's concerned husband contacted Stochel when Harbaugh's symptoms got worse; and that Stochel completed the Form 1013 and called the police based on his conversation with Harbaugh's husband. Stochel had ample information available to him to determine that Harbaugh should be subjected to an involuntary mental evaluation under Georgia law. Under these circumstances, the Court cannot find that it was clear under the principle enunciated in *Jones* that Stochel's misrepresentation that he actually examined her within the preceding 48 hours converts an otherwise reasonable seizure into an unreasonable one.

Finally, Stochel's conduct was not so far beyond the hazy border between excessive and acceptable action that he had to know he was violating the Constitution. While Harbaugh's Complaint sufficiently alleges that Stochel may not have precisely followed the personal examination requirement of O.C.G.A. § 37-3-41(a), it was not clearly established at the time of the events giving rise to this action that a mental

13

health professional presented with the circumstances Stochel faced violates the Fourth Amendment by completing a Form 1013 and asking that the police execute it.

While the Court certainly has concerns about Harbaugh's allegation that Stochel misrepresented that he examined her within the 48 hours preceding her arrest and evaluation, the Court is not tasked with grading Stochel's compliance with the Georgia statute.  Instead, the Court must determine whether Stochel was on clear notice that his conduct likely violated Harbaugh's constitutional rights.  In making this determination, the Court must consider all of the circumstances.  Those circumstances establish that Stochel, as Harbaugh's psychologist, was intimately familiar with her mental condition. He had received reliable reports of her increasing instability in the days leading up to his decision to have her evaluated. Nothing suggests that he was unreasonable in his grave concern that she posed a risk to herself or others.  He was aware of a statutory procedure that permitted a limited involuntary detention of his patient so that she could be evaluated for her own protection and the protection of others.  And he knew that mental health professionals would perform that examination promptly, and if their finding did not support a conclusion that she posed an immediate danger, then she would be released expeditiously.  Although it was clear that his failure to

examine her within the preceding 48 hours violated the Georgia statute, it was not clear that his violation of that statute, given the existence of arguable probable cause that she was a danger to herself or others, escalated the statutory violation to a constitutional one.  The Court cannot conclude that a reasonable official in Stochel's position would understand that his conduct violated Harbaugh's Fourth Amendment right to be free from unreasonable seizures.  Stochel is therefore entitled to qualified immunity.

**II.   Harbaugh's Fourteenth Amendment Claims**

Harbaugh also asserts two Fourteenth Amendment Claims: a substantive due process claim and a procedural due process claim.  Harbaugh appears to concede that her substantive due process claim is "redundant and unnecessary."  Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 14 n.3, ECF No. 22.  The Court agrees.  Harbaugh's substantive due process claim is based on her allegation that Stochel's actions led to her arrest and detention.  This claim is properly analyzed under the Fourth Amendment, which provides an "explicit textual source of constitutional protection against" an unlawful seizure.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Harbaugh's procedural due process claim is virtually indistinguishable from her Fourth Amendment claim.  It is based on Harbaugh's assertion that Stochel deprived her of her liberty

15

without due process of law by completing the Form 1013 and calling the police to transport Harbaugh to the hospital. "Procedural due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a liberty interest." *Grady v. Baker*, 404 F. App'x 450, 456 (11th Cir. 2010) (per curiam) (internal quotation marks omitted). Here, Harbaugh does not argue that Georgia has inadequate procedures for detaining an individual for a mental health evaluation. She does not contend that she was denied a hearing or post-deprivation review. Rather, she contends that Stochel did not follow Georgia's rules regarding the Form 1013. At the core of Harbaugh's argument is her contention that Stochel acted with deliberate indifference to her rights because he had no basis for completing the Form 1013. This claim is based on the exact same conduct as Harbaugh's Fourth Amendment claim. As discussed above, it was not clearly established at the time of the events giving rise to this action that a mental health professional presented with the circumstances Stochel faced violates the Fourth Amendment by completing a Form 1013 and asking that the police execute it. Therefore, the Court cannot conclude that a reasonable official in Stochel's position would understand that his conduct might constitute deliberate indifference to Harbaugh's liberty interests, and Stochel is

16

entitled to qualified immunity on Harbaugh's procedural due process claim.

CONCLUSION

For the reasons set forth above, Stochel is entitled to qualified immunity on Harbaugh's claims against him. Therefore, Stochel's Motion to Dismiss (ECF No. 16) is granted.

IT IS SO ORDERED, this 29th day of April, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE